Justice INDEGLIA,
dissenting.
While I agree with my colleagues in the majority that the three documents[1] introduced into evidence may have been improperly admitted, I remain convinced that they were cumulative in nature and any error in their admission, at most, was harmless. See Now Courier, LLC v. Better Carrier Corp., 965 A.2d 429, 435 (R.I.2009) (noting that the admission of otherwise inadmissible evidence “is harmless when the record demonstrates that it is merely cumulative of proper evidence”); Flanagan v. Wesselhoeft, 765 A.2d 1203, 1210 (R.I.2001) (holding that “the use of unauthenticated excerpts from medical treatises and/or articles did not constitute-prejudicial error in light of the totality of the evidence presented”); Maynard v. Rhode Island Hospital, 536 A.2d 532, 534 (R.I.1988) (stating that any error in admission of evidence was “harmless” because complaining party “had already admitted” similar facts).
The plaintiff contends that the emphasis of these documents so prejudiced Dr. Lang with the jury that it could not fairly evaluate his testimony and ultimately her case. Still, it was plaintiff who opened the gate to this information when she agreed to conduct Dr. Lang’s voir dire examination before the jury to determine his qualifications as an emergency medicine expert.[2] During plaintiffs direct examination or without objection on cross-examination, Dr. Lang revealed much of the information found in the documents. He told the jury (1) he was not board-certified in emergency medicine in the United States, (2) he was not licensed to practice medicine in the United States, and (3) he never worked in the United States as a physician. Nothing in these exhibits changed those facts, especially in light of the trial justice’s caution to the jury, again without objection, that the trial justice makes the determination as to the expertise of witnesses and then, shortly thereafter, instructed the jury that he found Dr. Lang qualified as an expert in the field of emergency medicine both as to the standard of care and causation. Nor can plaintiff argue that this information was a surprise. As made clear at oral argument, the documents were appended to defendants’ motion in limine to preclude Dr. Lang’s testimony heard eight days before the start of trial. At the completion of testimony, the trial justice further instructed, without additional objection, as to the jury’s consideration of expert witnesses.
After three weeks of trial, the jury then deliberated “for about one half (1/2) hour” before returning a verdict for defendants. Besides the three documents, they were able to consider other exhibits including *332 Dr. Lang’s impressive forty-four page curriculum vitae as well as the testimony of witnesses.
Despite the instruction of the trial justice declaring Dr. Lang’s expertise, his timely and balanced cautionary instruction at the voir dire hearing, and, in my view, his accurate final expert instruction, the majority suggests that the jury plucked out these three single-spaced documents to eviscerate the plaintiffs case. I cannot accept that conclusion, and thus, respectfully dissent.

. It is worth noting that plaintiff and the majority place dispositive significance on the impact of these three documents, yet plaintiff herself failed to ensure that certified copies of these documents were made part of the record on appeal notwithstanding the requirements of Article I, Rule 10 of the Supreme Court Rules of Appellate Procedure.

. At oral argument, plaintiff contended that she was faced with a Hobson’s choice of employing this mechanism or being unable to have Dr. Lang complete his testimony before returning to Canada.